Good morning, Your Honors. May it please the Court, Rosemary Fazio and Connie Chow, for Appellant Seven Signatures General Partnership. Your Honors, if time permits, I would like to reserve two minutes for rebuttal. Okay, I'll try to help you, and then you can also see the clock there. Thank you, Your Honor. Your Honor, the overall dispute involves Seven Signatures' efforts to close its sales contract to purchase Trump Tower Waikiki Unit 3509. The limited question before the District Court posed by Seven Signatures' motion to compel arbitration and Irongate's motion for summary judgment was whether or not that specific performance claim should be resolved by arbitration or by litigation. On summary judgment, in the face of disputed material facts, the District Court found that Irongate had the, quote, Irongate had the opportunity in its sole discretion to terminate the sales contract. The District Court found that because the sales contract was terminated, the ADR provision contained in the sales contract was no longer of effect, and so therefore Irongate was not obliged to arbitrate this specific performance claim. The District Court's decision was error based upon the face of the parties' agreements, and even though it's not necessary to consider extrinsic evidence, the evidence of the parties' course of dealing also demonstrates that the Circuit Court should have ordered arbitration. Let me ask you something. Yes, Your Honor. Did the deal ever close? No, it did not close. So there's no closing date? No, that's not correct, Your Honor. Okay, that's what I'm asking. Yeah, the sales contract specifically defines closing and closing date. They are two distinct terms. The deal did not close because Irongate refused to close at the January 6, 2011, closing date, which Irongate set in its sole discretion. May I ask a question? Yes, sir. Regarding Hawaiian law and contract interpretation. Yes. You said that the District Court committed error because the face of the contract is in your favor, as well as the course of dealing. Now, concentrate on the last portion of my question. Yes. Under the law, if a contract is plain on its face, does the law allow us to consider evidence of course of dealing, or do we first have to make a preliminary determination that the contract is ambiguous, can reasonably be interpreted to mean at least two things? Yes, I agree that that's correct. What is correct? I've put two questions. Okay. The latter question, Judge Bea. We must first find that it's ambiguous before we consider course of dealing. True? True under general contract law, but, Your Honor, I'd like to point out that this is a motion to compel arbitration, and you had asked about Hawaii law. Hawaii law, when a judge is confronted with a motion to compel arbitration, requires the judge to answer two questions and two questions only. One, whether the parties have an arbitration agreement, and two, whether the dispute falls within the scope of the arbitration agreement. But I think the position of Iron Gate is that the master-settler agreement extinguished any rights under the sales contract. Right? That's a right under the sales contract. If they're right to extinguish any rights under the sales contract, we don't get to the question that you just stated. That is Iron Gate's position, Your Honor. That's correct. First of all, you have to tell me, what about the contract, plain on its face, shows that the master-settlement agreement was not meant to deal with your claim? Okay. So we have the interplay between two provisions. The exclusive jurisdiction provision in the master-settlement agreement and the six-page solid caps ADR provision, which was drafted solely by Iron Gate, which requires the parties to arbitrate all disputes regarding the sales contract and all other agreements between the parties. The two provisions could and should have been reconciled in favor of arbitration for a number of reasons, Your Honor. First, the exclusive jurisdiction provision only covers disputes regarding the contents of the master-settlement agreement. Here the dispute is whether or not Iron Gate provided adequate time to close with the financing that Iron Gate was providing to Seven Signatures Resale Buyer. Your position that the exclusive jurisdiction listed certain transaction documents, one of which was not 3509? That's correct, Your Honor, and that was going to be another point that I was going to make. In the transaction documents that the master-settlement agreement explicitly supplemented and controlled the terms of, that's called the purchase right and transfer agreement, that provided for exclusive jurisdiction of Tokyo courts. So what the exclusive jurisdiction provision in the master-settlement agreement did was transfer jurisdiction from the Tokyo courts to the Hawaii courts. In addition, Your Honor, there is nothing in the master-settlement agreement which explicitly revokes the ADR provision of the sales contract. And Iron Gate's behavior confirms that it understood and agreed with this understanding because when Seven Signatures, when Iron Gate refused to close and Seven Signatures invoked the ADR provision that's contained in the sales contract, Iron Gate did not say, no, no, the arbitration doesn't apply. Instead, it said, you know, I think that we can, it expressed confidence that it could work out an agreement, but said if we don't reach agreement, then we hope that we can agree to avoid arbitration. But that, I don't think you go there if the two agreements can be reconciled. Do you agree with that? Yes, Your Honor. The question I had goes back to my original question. Is there a closing date? Yes, there is a closing date, Your Honor. Okay, so, and what is the closing date? The closing date per the terms of the sales contract is to be set by Iron Gate in its sole discretion and the closing date that here is applicable is January 6, 2011 because it's at that time that Iron Gate refused to close, even though the financing that was to be provided by Iron Gate's subsidiary was ready and the parties were ready, willing, and able to close at that time. When Iron Gate refused to close on January 6, 2011, that's the closing date that is applicable to this dispute. I know you've used different dates in you meaning maybe you, but also seven signatures as to what's the closing date. And one way to take a look at this is to not try to reconcile the agreement number one and the MSA, but to see whether or not this claim is before or after the closing date, in which case if it's after the closing date, you have one answer, and if it's before the closing date, you have a different, and we may not even get to that broader question. What is your response to that, that we basically, you know, for arbitration to happen it has to be after the closing date? That's correct. And I understand Iron Gate says it's before the closing date, end of story. What is your response? Yes. Iron Gate claims that the closing date never occurred, and if that were true, I would agree that the arbitration provision does not apply. But it is not true. Iron Gate has set the closing date. Iron Gate refused to close at the closing date, and therefore this specific performance claim falls within the ADR provision. So you can have a hypothetical closing date that never occurs, and then that actually is the dividing line for arbitration or arbitration. No, I disagree, Your Honor. There's no hypothetical closing date here. There is an actual closing date. And that closing date, as I said, was January 6, 2011, and at that time the specific performance claim ripened. The district court concluded that Iron Gate could, in essence, default you folks. What was the basis for that? The basis was the district court's view, which we believe is mistaken, which side had the so-called better argument, which is not the standard of review for summary judgment. Summary judgment should be that all disputed facts should be resolved against the non-moving party, I mean in favor of the non-moving party. So on that basis, the district court should have denied the motion for summary judgment and should have granted the motion to compel. Ms. Sonsia, I have a question. Yes, Your Honor. I'm reminded of what Judge McKeown asked you, and I don't have a record citation. It might be able to help me. I made a notation that there was a factual finding that Iron Gate had set a closing date of January 6, 2011 by the trial court. Yes. Is that factual finding valid? If it is, do we give it deference? Your Honor, I don't want to misstate a position, and I have to say, regretfully, I'm not certain of that. That's my recollection, but I'm not certain. But in any event, whether or not the district court made such a factual finding, the fact remains, the closing date was January 6. At that point, Iron Gate should have closed. When Iron Gate didn't close, seven signatures invoked ADR, and Iron Gate expressed optimism that they could settle without ADR. And it's interesting to note, also, Your Honors, that in Iron Gate's 19-page memorandum, in support of its motion for summary judgment, never once did Iron Gate claim that the exclusive jurisdiction provision supersedes the six-page ADR provision in the sales contract. And I think that that's important, Your Honor, in understanding the general context of this dispute. What I'm referring to, Ms. Fazio, is page 12 of the decision, ER 45, and it reads, Iron Gate also scheduled closing dates, first on December 22, 2010, document number, and then on January 6, 2011, after closing failed to take place on December 22, 2010. Should we treat that as a finding of fact by the trial court? Yes, Your Honor, thank you for pointing that out, and I think the answer is yes. Well, may I ask you then, this is where I'm running into some trouble, and I would need to go back to double-check the record, but I'm reading from Iron Gate's brief where they say that seven signatures first claimed in its motion to compel the closing date was September 15. And then, in a supplemental brief in response to the district court's request, seven signatures said the date was December 22. And then, in its opening brief here, it relied on January 6. So, is that an accurate statement of the different positions taken by seven signatures as to when the closing date was? Yes and no, Your Honor. The closing date was, for purposes, when the specific performance claim ripened, was January 6, 2011. Now, you have to remember that the closing date is to be scheduled by Iron Gate in its sole discretion. And Iron Gate's argument to the court that it never set a closing date is just not believable because that would frustrate the entire purpose of the sales contract. But, in any event, Iron Gate purported to terminate the sales contract in mid-November of 2010. The only way that Iron Gate could have purported to terminate is if seven signatures failed to close on September 15. So, in that regard, Your Honor, the September 15, 2010 closing date is relevant to the court for its determination because that goes to the issue of whether or not Iron Gate properly terminated. But, in any event, that is a question for the arbitrator. All right. You have a little bit of time left for rebuttal. Would you like to say that? I would, Your Honor, if it's acceptable. Thank you. Good morning. My name is Andrew Lautenbach, and I'm here with Terrence O'Toole this morning. We represent Respondent, FLE, Iron Gate, ASREP, BW, LLC. And may it please the court, I'd like to start by saying, at least on the first point made by Ms. Fazio, I agree. There was only one issue before the district court, and there's only one issue before the court today, and that is whether or not the underlying dispute here is arbitrable under the terms of the sales contract. Now, the reason that it's not arbitrable, and I think the primary reason that the district court focused on, is that the underlying dispute here arises under and, in all respects, is governed by the Master Settlement Agreement. And the Master Settlement Agreement is unambiguous and plainly provides that disputes related to that agreement are subject to the exclusive jurisdiction of the courts of the State of Hawaii. Does the MSA Master Settlement Agreement contain an express waiver of the sales contract? You can start with a yes or no. No, Your Honor. By waiver of the sales contract, if you're asking if the MSA effectively terminates all provisions of the sales contract, I would agree it does not. It modifies certain provisions of the sales contract. It modifies provisions regarding the closing date. Does it contain an express waiver or repudiation of the arbitration provisions of the sales contract? I believe it does in the context of this case. I don't believe that it entirely repudiates the arbitration agreement. It does not say, for example, the arbitration agreement is deleted in its entirety. But what it does say is that there will be no arbitration as to disputes that relate to the Master Settlement Agreement. Now, what has become clearer and clearer in this case is that the underlying dispute has to do with whether the termination of the sales contract was effective and appropriate per the terms of the Master Settlement Agreement. This isn't a question of enforcement of the sales contract. It's a question of whether Iron Gate breached the Master Settlement Agreement by failing to provide adequate time to close. How do you address the issue that the transaction documents listed in the Master Settlement Agreement, they don't list the unit 3509? Your Honor, Seven Signatures contracted to purchase 166 units from Iron Gate. There were numerous units that were expressly included in the Master Settlement Agreement, in the operative portions of that agreement. The preamble to the Master Settlement Agreement did not list every individual sales contract that it was modifying. But we have cited case law to the Court for the proposition that statements in a preamble, preliminary statements in an agreement, do not govern the party's intent, where the party's intent is expressly laid out in the operative portions of the agreement. So in looking to whether the Master Settlement Agreement does, in fact, impact or modify the sales contract in any way, you have to look to the operative terms of the Master Settlement Agreement. And I think when you get there, there can be no question that the Master Settlement Agreement changes certainly some portions of the sales contract and some portions of numerous sales contracts. As to all units? As to at least all units that are listed in the Master Settlement Agreement. Now, Seven Signatures argues that it also impacts other units that were not listed. That's not a relevant issue in my view. In my view, the Master Settlement Agreement unquestionably impacts or modifies the agreements that are listed therein. And therefore, to the extent that it modifies the sales contract, it also expressly supersedes the sales contract to the extent that the two contracts are inconsistent with one another. What was the closing date? Well, Your Honor, that's an interesting question, because there's a distinction in my mind between a closing date and the closing date. So Iron Gate has the... What is the relevant closing date? The relevant closing date did not occur, Your Honor. Iron Gate set multiple closing dates, but as those dates approached, Iron Gate repeatedly agreed to extend the time to close. So the closing date was set for September 15th, and that was what they originally argued was as the operative closing date. But prior to that agreement or that closing date happening, the parties already knew that the unit was not going to close on September 15th. And the drafts of the Master Settlement Agreement expressly contemplate that adequate time would be provided in Iron Gate's sole discretion. This sounds to me like a question of fact. Your Honor, that is possibly a question of fact. I think that there is... It's even possible. Don't you lose on summary judgment? I don't believe so, because under the terms of the... Do you think it's material? Material as to whether the closing date occurred? If the MSA did not exist, it would absolutely be material. But in light of the Master Settlement Agreement that in all respects governs this dispute and... So it's at least arguably material, right? Your Honor, if we were to disregard the Master Settlement Agreement... And if you dispute whether a closing date was ever set, they say January 6th. There is a question that the Court would need to determine if it were deciding arbitrability under the sales contract alone as to whether or not the closing date occurred. So let me just unpack that. If we were to determine that the MSA superseded the sales contract in some respects, we wouldn't reach this question of whether the closing date was relevant under the sales contract, correct? I believe that's correct. However, if for some reason we didn't go that route and we only went the route of whether there's a claim under the arbitrability clause of the sales contract, then the closing date is relevant, correct? I think that's correct. If you were to... Going back to Judge Hawkins' question and the one we started with earlier when we spoke with Seven Signatures Counsel is there seems to be a dispute over what is the closing date, right? Yes. Okay. So if that's the case, I guess we couldn't... On appeal, we couldn't decide this case simply under the sales contract, correct? Well, Your Honor, I believe that the record is sufficient to show that the closing date was repeatedly continued. I believe that you can make your ruling based on any grounds that appear in the record. Well, it was continued, but was it last set for the 6th? I don't believe that Iron Gate ever set the 6th as a closing date. The lender said we can be ready to close in three days. That was on January 3rd. But you need to resolve this issue with Jason Grossfeld, who's a principal of Iron Gate. What did you do with the district court's statement that you did set a closing date of January 6th, 2011? Do you disregard it? Well, Your Honor, the district court said that Iron Gate set closing dates on September 15th, December 22nd, and I don't recall exactly what the terms that the district court used were. I did not read that in my initial read as a finding of that. You set closing dates first on December 22nd, and then on January 6th after closing failed to take place on December 22nd, and after seven signatures notified Iron Gate that it was ready, willing, and able to close on Unit 3509. Isn't that pretty explicit language that you set the closing date on January 6th, 2011? Well, Your Honor, if that were read as a finding of fact that it was set on January 6th, then the court would have to, I suppose, look at whether that was a correct finding of fact. You're here on a de novo review, so. If we were to move off of that, it certainly seems there may be a dispute as to what the meaning of this, well, I'll be ready in three days, but you don't have the escrow in hand, whether it actually set a closing date. Would you go back to this intersection between the sales contract and the MSA and why your position and I think the district court position was that they were superseded, correct? Well, that's absolutely correct, Your Honor. The underlying dispute here is whether or not Iron Gate effectively and appropriately terminated the sales contract pursuant to the terms of the MSA or whether or not Iron Gate breached the MSA by terminating the sales contract as it did. There's no question that that's a dispute that falls under the Master Settlement Agreement, and the Master Settlement Agreement expressly states that this dispute is subject to the exclusive jurisdiction of the courts. So in my view, I think that what the district court did was perhaps undertake an analysis that was even more favorable to arbitration than my initial analysis, which was this dispute has to do with the Master Settlement Agreement. Therefore, it's under the Master Settlement Agreement. What the district court did is it went one step further to say, is there any way that I can find this dispute to be arbitrable? Is there any way that the provisions of the sales contract require arbitration of any piece of this dispute? And that is why the district court went down the road of determining whether the Master Settlement Agreement termination provision was applicable, because once you reach that finding, then there's no question that the dispute over termination is entirely governed by the Master Settlement Agreement. So there is plain language in the Master Settlement Agreement that states that seven signatures acknowledges that all units that are not ready to close are in default at this time and are terminable in Iron Gate's sole discretion. Now, seven signatures focuses on this language that says except as provided herein, but there's nothing in the Master Settlement Agreement that would state that Unit 3509 was not subject to that agreement or that limits Iron Gate's discretion to terminate the sales contract in its sole discretion under the Master Settlement Agreement. Instead, the Master Settlement Agreement repeatedly discusses the fact that any extension is going to be provided solely in Iron Gate's discretion. They expected closing to happen on September 30th, but they would be willing to extend it further in its sole discretion in exchange for seven signatures being willing to pay an accommodation fee, which, an important point, would not be paid unless and until the unit actually closed. Section 5E, which is that excerpt from Record 2, page 110, I believe, states that the accommodation fee was to be paid out of the closing proceeds. So basically that incentivizes Iron Gate to continue to provide time, but it doesn't limit Iron Gate's discretion to terminate the unit. Now, Judge Seabright did not find that the unit was terminated or that the termination was effective. But what he did find is that the terms of the Master Settlement Agreement, in all respects, control the question of whether the sales contract was effectively terminated. Your opposing counsel suggests that you, at some point, relevant to the dispute, your client was willing to arbitrate, expressed a willingness to arbitrate. I think that that overreads the emails that are in the record, Your Honor. My client did say, we're willing to talk about trying to work this out. Let's see if we can reach a deal and avoid arbitration. So the fact that my client, even if they were contemplating arbitration, that's not an agreement to arbitrate. They can agree to arbitrate at any time. And the statement that, I think we can avoid arbitration, can hardly be construed as an agreement to arbitrate. So I don't think that that conduct on the part of my client has anything to do with it. That comment constitutes in and of itself an agreement to arbitrate. I think her point is rather that your client's assumption was that disputes were subject to arbitration under the sales agreement. Your Honor, we don't have a record as to what exactly my client was thinking when he wrote that. We can avoid arbitration. It could easily be construed to mean that he wasn't focusing on what the dispute resolution form would be. Does that have any relevance if we're looking at the terms of the contract? I don't think that it has any relevance whatsoever because the contract is unambiguous. So you don't start looking at outside evidence at all because the decision can be made within the four corners of the contracts at issue. My guess is your argument would be different if he had used the word litigation. Well, I would be happier with him if he had. But then you can't control your client's own, right? Your Honor, and frankly, I just don't see it as a material point here. May I ask a question? Absolutely. I think you were arguing that the lack of mention of Unit 3509 in the preamble to the MS-80 Master Settlement Agreement as one of the transaction documents should not guide us because later in the contract there is a specific mention of Unit 3509. Do I understand that to be your position? Yes, Your Honor. Yes, Your Honor. I believe that in determining whether the sales contract for Unit 3509 is at all subject to or modified by or included in the Master Settlement Agreement, you need to look at the operative provisions of the Master Settlement Agreement. And I don't know if the preamble. You can't limit yourself to the preamble. You know, I don't think that you can make an argument with a straight face that the Master Settlement Agreement had no effect on the sales contract for Unit 3509 whatsoever because there's no question that at least there was an extension of the closing date. There was an agreement to pay an accommodation fee. There was, let's call it an obligation on the part of the resale buyer to act diligently to close. That's not an obligation that arose under the sales contract. The resale buyer is not a party to the sales contract. So there's no question that the Master Settlement Agreement has an impact here. The question is what is the impact of that document. And we think that it's clear the dispute is governed by the terms of the Master Settlement Agreement. And the Master Settlement Agreement is clear that that dispute is not subject to arbitration. And for that reason, we think the district court needs to be affirmed. Thank you. Thank you. Fazio, you have some rebuttal time. Thank you, Your Honor. Your Honors, the motion to compel arbitration should have been granted. The motion for summary judgment should have been denied. Seven signatures respectfully request that this court reverse the district court's decision in its entirety with instructions to compel the parties to arbitrate. If this court does not believe that the exclusive jurisdiction provision in the Master Settlement Agreement can be reconciled with the alternative dispute resolution provision in the sales contract, then we would ask the court to reverse the district court's finding as to the termination of the sales contract and to remand the question as to whether the sales contract was terminated to trial. We believe that all of this would be a question of fact to be decided either by the arbitrator or by the judge at trial. We believe it's the arbitrator who should be resolving these questions of fact. But in any event, the conclusion that the sales contract is terminated is a question of fact that should not have been summarily decided by the district court. The law is that an arbitration agreement is separate and distinct from the contract in which the arbitration agreement is embedded. So the district court should only have decided whether there's an ADR provision and whether or not the dispute falls within the scope of that ADR provision. Now Iron Gate says that the relevance... You've used your time. Okay, thank you, Your Honor. Thank you. It was actually a very, very nice summary. Sometimes parties forget to tell us what they want, and so that was very helpful. Thank you. I would like to thank all counsel for your argument this morning. The case just argued of seven signatures versus Iron Gate is submitted.
judges: Hawkins, McKeown, Bea